O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Securities and Exchange Commission, )<br>　　　　　　　　　　　　　　　 )<br>　　　　　　Plaintiff, )<br>　　　　　　　　　　　　　　　 )<br>v.　　　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　 )<br>Ruderman, *et al.*, )<br>　　　　　　　　　　　　　　　 )<br>　　　　　　Defendants. )<br>　　　　　　　　　　　　　　　 )<br>_____ ) | Case No. CV 09-02974 ODW (JCx)<br><br>Order **GRANTING** Petitions For Approval of Settlements and Attorneys' Fees [137, 139] [Filed 08/11/11] |

## I.   INTRODUCTION

Pending before the Court are Receiver David Ray's (the "Receiver") concurrently-filed Notices of Petition and Petitions for: (1) Instructions and an Order Approving Settlement with Prabhakar Guniganti ("Guniganti") and Approving Compensation of the Receiver's Special Litigation Counsel; and (2) Instructions and an Order Approving Settlements with (a) the Gabriel Kaplan Revocable Trust (the "Kaplan Trust") and Gabriel Kaplan ("Kaplan") as Trustee for the Gabriel Kaplan Revocable Trust; (b) Bosk Djordjevic ("Djordjevic"), and (c) Ryan Wald ("Wald"), and Approving Compensation of the Receiver's Special Litigation Counsel. (Dkt. Nos. 137, 139). Plaintiff, Securities and Exchange Commission (the "SEC"), filed a Statement of Non-Opposition to

1

Receiver's Petitions for Approval of Specified Settlements and Compensation of Special Litigation Counsel. (Dkt. No. 142.) Having considered the papers filed in support of the instant Petition, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. The Court finds the Receiver has met his burden of demonstrating the proposed settlements fall within the range of reasonableness and were negotiated in good faith. Accordingly, the Court **GRANTS** the Receiver's Petitions for Settlements with Prabhakar Guniganti, the Gabriel Kaplan Revocable Trust and Gabriel Kaplan as Trustee for the Gabriel Kaplan Revocable Trust; Bosko Djordjevic, and Ryan Wald. The Court also finds the Receiver has met his burden of demonstrating that the proposed attorneys' fees and costs are reasonable. Accordingly, the Court **GRANTS** the Receiver's Petitions for attorneys' fees and costs in the above-referenced matters.

## II.   BACKGROUND

On April 28, 2009, the Securities and Exchange Commission filed a Complaint against Bradley Ruderman; Ruderman Capital Management, LLC ("RCM"); Ruderman Capital Partners, LLC ("RCP"); and Ruderman Capital Partners A, LLC ("RCP-A"). (Dkt. No. 1.) The SEC alleged that Ruderman engaged in a scheme to defraud investors by offering investment materials through RCM to secure investments in the hedge funds RCM and RCP-A, which allegedly would never have been repaid. (*Id.*)

On May 7, 2009, the Court entered a permanent injunction and appointed David L. Ray as receiver of RCM, RCP and RCP-A, (Dkt. No. 31), based on the SEC's request and Defendants' consent, (Dkt. No. 25). Thereafter, on August 31, 2009, the Court entered default as to Defendants RCM, RCP, and RCP-A for failure to obtain counsel. (Dkt. No. 59.) Additionally, on motion of the Receiver and stipulation of bankruptcy trustee for RCP, the Court (1) terminated the duties of the Receiver as to RCP and (2) required advance approval of acts falling outside of Section IV ¶ C of the May 7, 2009 Injunction. (Dkt. No. 31.) Section IV ¶ C permitted investigation and discovery to account for all assets of Defendants. (Dkt. No. 59.) The Court also permitted the Receiver to retain attorneys for purposes of Section IV ¶ C. (*Id.*)

On September 9, 2009, the Court entered an Order modifying the Receiver's duties so as to be consistent with the Receiver's stipulation with the Trustee. (Dkt. No. 62.) As a result, the Receivership Estate currently consists of RCM and RCP-A only. (*Id.*) Subsequently, on September 2, 2010, the Court entered an Order permitting the Receiver to retain legal counsel to investigate and pursue all viable claims and avoidance actions of the Receivership Estate, but required the Receiver to obtain additional approval on the terms and conditions for which counsel was to be retained. (Dkt. No. 105 at 2.)

## A.    The Guniganti Action and Proposed Settlement

On November 3, 2010, the Court denied the Receiver's Motion to employ Saltzburg Ray & Weissman LLP ("SRW") as special litigation counsel on a contingency basis to pursue claims against Guniganti to avoid and recover certain disbursements from RCP-A. (Dkt. No. 118.) On November 9, 2010, the Receiver filed an action against Guniganti on behalf of RCP-A, *Ray v. Guniganti*, CV 10-08537(the "Guniganti Action"). On December 22, 2010, the Court approved the appointment of Levene, Neale, Bender, Yoo & Brill L.L.P. (the "Levene Firm") to pursue this action. (Dkt. No. 122.)

Guniganti was a long-time investor with Ruderman. At issue in the Guniganti Action were two wire transfers of $1,000,000, each of which Ruderman made to Guniganti during the fall of 2006 in RCP-A's name. (Mot. at 7.) At that time, Guniganti had not invested money in RCP-A. (Id.). The Receiver argued that these two wire transfers were made pursuant to a *Ponzi* scheme orchestrated by Ruderman. (*Id.*)

Guniganti answered the Receiver's complaint and filed a counterclaim against the Receiver. (*Id.* at 8.) Written discovery was taken by both sides, and the parties took Ruderman's deposition in a Texas federal prison. (*Id.*) Prior to mediation, the parties reached the settlement agreement currently before the Court. (*Id.*) The proposed settlement calls for Guniganti to make a payment to the Receiver that will range from $175,000 to $179,000, depending on how quickly Guniganti makes the payment. (Mot. at 4-5.) If Guniganti has not made the payment by October 15, 2011, it is proposed that the Receiver may enter a stipulated judgment in favor of the receiver in the amount of $250,000. (Mot. at 5.)

### B.    The Kaplan Trust Action and Proposed Settlement

The Receiver filed a Complaint against the Kaplan Trust and Kaplan on February 23, 2011, *David L. Ray v. The Gabriel Kaplan Revocable Trust*, Case No. CV 11-01613. The Complaint stems from allegations that Ruderman caused $142,000 to be wired from RCP-A's account to an account in Kaplan's name. (Mot. at 8.)  The Receiver does not contend that Kaplan had any involvement in Ruderman's diversion of investor funds, or that he had any involvement or knowledge of Ruderman's *Ponzi* scheme.  (*Id.* at 8-9.) Instead, the payment related to a series of high-stakes poker games that Ruderman, Kaplan, Djordjevic, and Wald participated in for several years pre-dating the SEC's complaint against Ruderman.  (*Id.* at 8.)  Under the terms of the proposed settlement, Kaplan will pay the Receiver $63,900 in full satisfaction of all claims.

### C.    The Bosko Djordjevic Action and Proposed Settlement

The situation involving Djordjevic is largely the same as that of Kaplan. (*Id.* at 10.)  However, the Receiver only recently located documentation relating to two payments totaling $127,300 sent to Djordjevic from RCP-A and RCM accounts.  (*Id.*) As such, litigation has not yet commenced against Djordjevic. (*Id.*) As with Kaplan, the Receiver does not contend that Djordjevic had any involvement in Ruderman's diversion of investor funds, or that he had any involvement or knowledge of Ruderman's *Ponzi* scheme.  (*Id.*)  Under the terms of the proposed settlement, Djordjevic will pay the Receiver $57,285 in full satisfaction of all claims.

### D.    The Ryan Wald Action and Proposed Settlement

The situation involving Wald is almost identical to that of Djordjevic. (*Id.*)  Wald received a check in the amount of $100,000 drawn from an RCM account. (*Id.*)  As with Kaplan and Djordjevic, the Receiver does not contend that Wald had any involvement in Ruderman's diversion of investor funds, or that he had any involvement or knowledge of Ruderman's *Ponzi* scheme.  (*Id.*)  Under the terms of the proposed settlement, Kaplan will pay the Receiver $45,000 in full satisfaction of all claims.

### III.    LEGAL STANDARD

4

Local Rule 66-8 states, "[e]xcept as otherwise ordered by the Court, a receiver shall administer the estate as nearly as possible in accordance with the practice in the administration of estates in bankruptcy." Accordingly, bankruptcy procedure informs the Court's approval of the proposed settlements. Federal Rule of Bankruptcy Procedure 9019 governs compromises and settlements reached in bankruptcy court. It provides, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." In examining a proposed settlement, the Court must evaluate four factors:

> (a)   [t]he probability of success in the litigation;
> (b)   the difficulties, if any, to be encountered in the matter of collection;
> (c)   the complexity of the litigation, as well as the expense, and the expense, inconvenience and delay necessarily attending it; [and]
> (d)   the paramount interest of creditors, giving proper deference to their reasonable views [regarding the proposed compromise].

*United States v. Edwards*, 595 F.3d 1004, 1012 (9th Cir. 2010) (quoting *In re A&C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986)).

"The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Id.* In general, compromises are favored in bankruptcy actions. *In re Stein*, 236 B.R. 34, 37 (D. Or. 1999). Accordingly, the Court generally gives deference to a trustee's business judgment, *In re Pac. Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004), and will approve a compromise that falls within the "range of reasonableness." The Second Circuit has defined "range of reasonableness" as follows:

> [I]n any case there is a range of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion - and the judge will not be reversed if the appellate court conclude[s] that the settlement lies within that range.

*Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), *cert. den.*, 409 U.S. 1039 (1972).

Although the Court may not simply "rubber-stamp" the decision to enter into a settlement, it need not conduct an exhaustive investigation, hold a mini-trial on the merits of the claims sought to be compromised, or require that the settlement be the best that

5

1    could possibly be achieved.  *In re Walsh Const., Inc.*, 669 F.2d 1325, 1328 (9th Cir.

2    1982).  Rather, the Court "need only find that the settlement was negotiated in good faith

3    and is reasonable, fair and equitable."  *Pac. Gas*, 304 B.R. at 417.

## IV.   DISCUSSION

5          Before turning to its examination of the settlements, the Court notes that the SEC

6    filed a statement of non-opposition to the approval of all the proposed settlements and

7    compensation of special litigation counsel.  (Dkt. No. 142.)

### A.     The Guniganti Proposed Settlement

9          The Court finds that the Receiver has met his burden in demonstrating each factor

10   with respect to the Guniganti Settlement.  As to the probability of success on the merits,

11   the Court notes that there are several potential legal defenses that could preclude success

12   on the merits, including statute of limitations defenses, a defense as to whether Guniganti

13   was a "net gainer," and whether RCP-A was solvent at the time the two wire transfers

14   were made.  (Mot. at 11-12.)  Thus, as these potential defenses increase the uncertainty

15   of the litigation, this factor weighs heavily in favor of the settlement.  As to the difficulty

16   of collection, if the Receiver were to prevail in this litigation with a large recovery,

17   collection could be difficult.  (Mot. at 12-13.)  Thus, this factor weighs in favor of the

18   settlement.  As to the complexity, expense, inconvenience, and delay of litigation, the

19   extensive discovery demonstrates this would likely continue to be a heavily contested

20   matter as it moves toward mediation, the summary judgment phase, a potential jury trial,

21   and possible lengthy appeals.  (Mot. at 13).  Thus, this factor weighs in favor of the

22   settlement.  As to the paramount interest of creditors, at least two of four scenarios could

23   result in the Receiver obtaining nothing.  A third scenario exists where the judgment

24   would be $75,000 higher. The final scenario could involve a substantially higher

25   judgment, with the concurrent risks of appeal and difficulty in collecting the judgment.

26   (Mot. at 13.)  Thus, this factor weighs in favor of the settlement.  Overall, the Court finds

27   the settlement reasonable, and therefore, approves it.

28         With respect to attorneys' fees and costs, on December 22, 2010, the Court

approved the Receiver's retention of the Levene Firm on a contingency basis, whereby

Receiver's Counsel was entitled to a fee of thirty-three percent of recovery obtained through settlement up to sixty days before any trial. (Dkt. No. 122.) Pursuant to this agreement, the Receiver has requested authorization to pay the Levene Firm either $57,750.00, $58,410.00, or $59,070.00, depending on when Guniganti makes the settlement payment. The Receiver has also requested, with substantiation, costs totaling $9,265.55. (Mot., Exh. D). The Court finds these reasonable and in conformity with the Court's prior approval, and therefore, approves the fee award and costs.

## B. The Kaplan, Djordjevic, and Wald Proposed Settlements

The Court finds that the Receiver has met his overall burden in demonstrating the reasonableness of the Kaplan, Djordjevic, and Wald settlements. As to the probability of success on the merits, the Court notes that there are several potential legal defenses that could preclude success on the merits in these claims, including the legality of the poker games, whether the Receivership Entities received reasonably equivalent value by virtue of their alter-ego relationship with Ruderman, whether RCP-A was solvent at the time of the transfers, and whether there are statute of limitations issues. (Mot. at 14-15). Thus, as these potential defenses increase the uncertainty of the litigation, this factor weighs heavily in favor of the settlement. As to the difficulty of collection, the Receiver is not aware of any issues that would impede collection, (Mot. at 15), and thus, this factor weighs against the settlements.    As to the complexity, expense, inconvenience, and delay of litigation, the Kaplan Action is on a trial track, and depositions remain to be completed (including the out-of-state deposition of Ruderman). (*Id.*) In the event the Receiver prevails at trial, the possibility of lengthy appeals would exist. If an appeal is taken, the Receiver could suffer delay and expense in securing a final judgment, or alternatively, Kaplan, Djordjevic, and Wald could prevail. (*Id.*) Thus, this factor weighs in favor of the settlement. As to the paramount interest of creditors, the proposed settlements represent forty-five percent of the Receiver's maximum recovery against Kaplan, Djordjevic, and Wald. (*Id.*) These settlements would represent an immediate infusion of income into the Receivership Estate, and avoid the expenses and uncertainty

of litigation. (*Id.* at 15-16). Thus, this factor weighs in favor of the settlement. Overall, the Court finds the settlements reasonable, and therefore, approves each settlement.

With respect to attorneys' fees and costs, on December 22, 2010, the Court approved the Receiver's retention of the Levene Firm on a contingency basis, whereby Receiver's Counsel was entitled to a fee of thirty-three percent of recovery obtained through settlement up to sixty days before any trial. (Dkt. No. 122). Pursuant to this Order, the Receiver has requested authorization to pay the Levene Firm the sum of $54,841.05 (33% of the total recoveries of $166,185.00 from these three matters). The Receiver has also requested, with substantiation, costs totaling $2,417.62. (Mot., Exh. F.) The Court finds these reasonable and in conformity with the Court's prior approval, and therefore, approves the fee award and costs.

## V.   CONCLUSION

The Court holds that the Receiver has met his burden of demonstrating that the proposed settlements fall within the range of reasonableness and were negotiated in good faith. Accordingly, the Court **APPROVES** the Receiver's Applications for Settlements with Prabhakar Guniganti; the Gabriel Kaplan Revocable Trust and Gabriel Kaplan as Trustee for the Gabriel Kaplan Revocable Trust; Bosko Djordjevic; and Ryan Wald. As to the Guniganti Settlement, because the October 15, 2011 deadline has passed, the Court modifies this deadline and hereby resets it for January 15, 2012. The Court also finds that the Receiver has met his burden of demonstrating that the proposed attorneys' fees and costs are reasonable. Accordingly, the Court **APPROVES** the Receiver's Applications for attorneys' fees and costs in the above-referenced matters.

**IT IS SO ORDERED.**

November 21, 2011

_____
HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE