O

1
2
3
4
5
6
7

8        **UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA**

10

11   SECURITIES AND EXCHANGE            Case No. 2:09-cv-02974-ODW(JCx)
     COMMISSION,
12                                       **ORDER GRANTING PETITION
                          Plaintiff,     FOR APPROVAL OF
13        v.                             SETTLEMENT [153]**

14   BRADLEY L. RUDERMAN;
     RUDERMAN CAPITAL
15   MANAGEMENT, LLC; RUDERMAN
     CAPITAL PARTNERS, LLC; and
16   RUDERMAN CAPITAL PARTNERS A,
     LLC,
17
                          Defendants.
18

19              **I.    INTRODUCTION**

20          David Ray, as the appointed Receiver for the Ruderman Capital Defendants,

21   petitions the Court to approve a settlement reached with American Express Company

22   and American Express Travel Related Services Company, Inc. (collectively

23   "American Express").    (ECF No. 153.)    Plaintiff Securities and Exchange

24   Commission has not submitted an opposition to the Receiver's petition.    Having

25   carefully considered the papers the Receiver filed in support of its Petition, the Court

26   deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78;

27   L. R. 7-15. The Court finds the Receiver has met his burden of demonstrating that the

28   proposed settlement falls within the range of reasonableness and was negotiated in

1  good faith.  Accordingly, the Court **GRANTS** the Receiver's Petition for Approval of

2  Settlement.

3  ## II.   FACTUAL BACKGROUND

4  On April 28, 2009, the Securities and Exchange Commission filed a Complaint

5  against Bradley Ruderman; Ruderman Capital Management, LLC ("RCM");

6  Ruderman Capital Partners, LLC ("RCP"); and Ruderman Capital Partners A, LLC

7  ("RCP-A").  (ECF No. 1.)  The SEC alleged that Ruderman engaged in a scheme to

8  defraud investors by offering investment materials through RCM to secure

9  investments in the hedge funds RCM and RCP-A, which allegedly would never have

10  been repaid.  (*Id.*)

11  On May 7, 2009, based on the SEC's request and Defendants' consent, the

12  Court entered a permanent injunction and appointed David L. Ray as receiver of

13  RCM, RCP, and RCP-A.  (ECF Nos. 25, 31.)  On August 31, 2009, the Court

14  subsequently entered default as to Defendants RCM, RCP, and RCP-A for failure to

15  obtain counsel.  (ECF No. 59.)  Additionally, on motion of the Receiver and

16  stipulation of bankruptcy trustee for RCP, the Court (1) terminated the duties of the

17  Receiver as to RCP; and (2) required advance approval of acts falling outside of

18  Section IV ¶ C of the May 7, 2009 Injunction.  (ECF No. 31.)  Section IV ¶ C

19  permitted investigation and discovery to account for all assets of Defendants.  (ECF

20  No. 59.)  The Court also permitted the Receiver to retain attorneys for purposes of

21  Section IV ¶ C.  (*Id.*)

22  On September 9, 2009, the Court entered an Order modifying the Receiver's

23  duties so as to be consistent with the Receiver's stipulation with the Trustee.  (ECF

24  No. 62.)  As a result, the Receivership Estate currently consists of RCM and RCP-A

25  only.  (*Id.*)  Subsequently, on September 2, 2010, the Court entered an Order

26  permitting the Receiver to retain legal counsel to investigate and pursue all viable

27  claims and avoidance actions of the Receivership Estate, but required the Receiver to

28  / / /

obtain additional approval on the terms and conditions for which counsel was to be retained.  (ECF No. 105, at 2.)

With respect to American Express, the Receiver asserts that Ruderman used funds obtained from investors held in an RCM account to make payments to American Express on certain outstanding charges incurred primarily for Ruderman's personal benefit.  (Pet. 5.)  The Receiver does not contend, however, that American Express had any involvement in Ruderman's diversion of investor funds, had any knowledge that Ruderman and the entities he controlled were engaged in a Ponzi scheme or any other fraudulent activity, or had knowledge that any transfer American Express received from RCM was related to fraudulent activity.  (*Id.*)  Further, American Express contends it "may have provided value to RCM in connection with the charges incurred on the credit card accounts maintained by RCM and on the payments thereon made to American Express."  (*Id.*)

The Receiver, American Express, and the bankruptcy trustee engaged in a collective mediation resulting in a settlement agreement.[1]  The proposed settlement calls for American Express to pay the Receiver $10,000.00 in full and complete satisfaction of all claims the Receiver and the Receivership Estate have against American Express.

### III.   LEGAL STANDARD

Local Rule 66-8 states, "[e]xcept as otherwise ordered by the Court, a receiver shall administer the estate as nearly as possible in accordance with the practice in the administration of estates in bankruptcy."  Accordingly, bankruptcy procedure informs the Court's approval of the proposed settlements.  Federal Rule of Bankruptcy Procedure 9019 governs compromises and settlements reached in bankruptcy court and provides that a court may approve a compromise or settlement on motion and

---

[1] The Receiver notes that the settlement is part of a global settlement including resolution of an adversary proceeding commenced by the trustee in the RCM bankruptcy case against American Express.  The bankruptcy trustee is currently seeking approval of his proposed compromise with American Express from the bankruptcy court.

following notice and a hearing.  In examining a proposed settlement, the Court must evaluate four factors:

(a)    [t]he probability of success in the litigation;

(b)    the difficulties, if any, to be encountered in the matter of collection;

(c)    the complexity of the litigation, as well as the expense, and the expense, inconvenience and delay necessarily attending it; [and]

(d)    the paramount interest of creditors, giving proper deference to their reasonable views [regarding the proposed compromise].

*United States v. Edwards*, 595 F.3d 1004, 1012 (9th Cir. 2010) (quoting *In re A&C Props.*, 784 F.2d 1377, 1381 (9th Cir. 1986)).

"The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims."  *Id.*  In general, compromises are favored in bankruptcy actions.  *In re Stein*, 236 B.R. 34, 37 (D. Or. 1999).  Accordingly, the Court generally gives deference to a trustee's business judgment, *In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004), and will approve a compromise that falls within the "range of reasonableness."  The Second Circuit has defined "range of reasonableness" as "a range [that] recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  Approval of a compromise will not be disturbed on appeal where the compromise falls within the range of reasonableness.  *See id.*

Although the Court may not simply "rubber-stamp" the decision to enter into a settlement, it need not conduct an exhaustive investigation, hold a mini-trial on the merits of the claims sought to be compromised, or require that the settlement be the best that could possibly be achieved.  *In re Walsh Const., Inc.*, 669 F.2d 1325, 1328 / / /

(9th Cir. 1982).  Rather, the Court "need only find that the settlement was negotiated in good faith and is reasonable, fair and equitable."  *Pac. Gas*, 304 B.R. at 417.

## IV.    DISCUSSION

The Court finds that the Receiver has met his burden in demonstrating each factor with respect to the American Express settlement.  As to the probability of success on the merits, the Receiver informs the Court that there are material issues the Receiver cannot state with certainty would be resolved in his favor and that could result in a judgment for American Express.  These issues include whether American Express provided value to RCM in connection with the subject transfers, whether RCM was insolvent at the time of the transfers or rendered insolvent as a result of the transfers, and whether the statute of limitations bars the Receiver's claims.  These issues increase the uncertainty of the litigation and therefore weigh in favor of the settlement.

Proceeding with the remaining factors, the Court discerns no impediment to the Receiver's collection of any claim against American Express; thus, this factor weighs against the settlement.  As to the complexity, expense, and inconvenience of litigation, the Court finds that the merits complications addressed above tend to increase the complexity and expense of this litigation.  Further, as the Receiver notes, "there is little doubt that American Express will appeal any adverse judgment.  An appeal would consume a substantial amount of time, and further increase the Receivership Estate's litigation expenses."  (Pet. 8.)  This factor therefore weighs in favor of the settlement.

Finally, as to the paramount interests of creditors, the Court finds that the American Express Settlement, together with prior recoveries by the Receiver, gives the Receivership Estate a means of potentially providing a distribution to the unsecured creditors of the estate.  The settlement agreement provides a certain benefit to the estate, thereby eliminating any uncertainty and additional costs in obtaining that benefit.  In addition, the Receiver notes that the settlement agreement was reached as

part of a global settlement along with the compromise reached between the RCP bankruptcy trustee in the trustee's action against American Express, and this global settlement will allow the trustee and the Receiver to complete their outstanding litigation against American Express in both estates.  Taking into consideration the expense of litigation, the risks and uncertainty of outcome, and the opportunity for immediate infusion of cash into the Receivership Estate, the Court finds that the paramount interests of creditors are served by the settlement agreement.  Thus, this factor weighs in favor of the settlement.

On balance, the Court finds the settlement agreement reasonable and negotiated in good faith.

## V.   CONCLUSION

The Court holds that the Receiver has met his burden of demonstrating that the proposed settlement with American Express falls within the range of reasonableness and was negotiated in good faith.  The Court therefore **APPROVES** the Receiver's proposed settlement with American Express.  Accordingly, the Receiver is hereby authorized to execute any documents and take any actions reasonably necessary to effectuate the terms of the settlement agreement.


**IT IS SO ORDERED.**


January 15, 2013

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**